UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
Derek Jackson,

                                        Plaintiff,

       -against-

The City of New York, Police Officer Frank Hernandez, Sergeant Zul Chowdhury, Sergeant Arthur McCarthy, Police Officer Lashonda Porterfield, and Police Officer Ryan Grandison,

                                        Defendants.
------------------------------------------------------------------------X

Civil Action No.   1:22-cv-00546

**COMPLAINT**

**JURY TRIAL DEMANDED**

Plaintiff Derek Jackson, by and through his attorney, Abe George, Esq., of the Law Offices of Abe George, P.C., complaining of the defendants herein, upon information and belief, respectfully shows to this Court, and alleges as follows:

**PRELIMINARY STATEMENT**

1. New Years Day of 2020 would be a day that Plaintiff Derek Jackson would never forget.  Rather than remembering it for the revelry of New Year's Eve parties, Derek will remember this as the day that members of the NYPD, while trying to effectuate his arrest, would cause him to suffer life altering injuries including a facial fracture to his left orbital which has caused continuing vision issues, and back/knee/shoulder injuries that has required Derek to undergo multiple surgeries and live a life in constant pain.

2. This is a civil rights action stemming from excessive force claims in which the Plaintiff seeks relief for the defendants' violations of his rights secured by 42 U.S.C. § 1983, by the United States Constitution, including its Fourth, and Fourteenth Amendments, and by the laws and Constitution of the State of New York.

1

3. Plaintiff seeks compensatory and punitive damages, an award of costs, interest and attorney's fees, and such other and further relief as this Court deems just and proper.

## JURISDICTION AND VENUE

4. Jurisdiction is conferred upon this Court by 28 U.S.C. §§ 1331 and 1343, this being an action seeking redress for the violation of the plaintiff's constitutional and civil rights.

5. Venue is proper in this district pursuant to 28 U.S.C. §§ 1391 (b) and (c), in that the events giving rise to this claim occurred within the boundaries of the Eastern District of New York.

## JURY TRIAL DEMANDED

6. Plaintiff demands a trial by jury on each and every one of her claims as pleaded herein.

## PARTIES

7. At all times relevant to this action, Plaintiff Derek Jackson is and was a resident of Kings County, New York in the Eastern District of New York.

8. Defendant CITY OF NEW YORK is and was at all times relevant herein a municipal entity created and authorized under the laws of the State of New York. It is authorized by law to maintain a police department, which acts as Defendant CITY OF NEW YORK's agent in the area of law enforcement and for which it is ultimately responsible. Defendant CITY OF NEW YORK assumes the risks incidental to the maintenance of a police force and the employment of police officers.

9. Defendant CITY OF NEW YORK was at all times relevant herein the public employer of Police Officer Frank Hernandez, Sergeant Zul Chowdhury, Sergeant Arthur McCarthy, Police Officer Lashonda Porterfield, and Police Officer Ryan Grandison,

10. Police Officer Frank Hernandez, Sergeant Zul Chowdhury, Sergeant Arthur McCarthy, Police Officer Lashonda Porterfield, and Police Officer Ryan Grandison, (collectively referred to as "defendant officers"), are and were, at all times relevant herein, duly appointed and acting officers,

servants, employees, and agents of the New York City Police Department (hereinafter "NYPD"), a municipal agency of defendant City of New York.

11. At all times herein, the defendant officers were acting under the color of their official capacity, and their acts were/are performed under color of the statutes and ordinances of the City of New York and/or the State of New York.

12. The actions of the defendant officers complained of herein were done as part of the custom, practice, usage, regulation and/or at the direction of the defendant City of New York.

13. Plaintiffs are suing the defendant officers in their individual and official capacities.

## NOTICE OF CLAIM

14. Plaintiff Jackson timely filed a Notice of Claim on or about March 27, 2020 with the Comptroller of the City of New York, setting forth the facts underlying plaintiffs' claims against Defendant City of New York.

15. On or about July 21, 2021, a 50-h hearing was held and to date, Plaintiff has received no answer, and no compensation by Defendant City of New York in response to his claim.

## STATEMENT OF FACTS

16. On or about January 1, 2020, at approximately 4AM, Plaintiff was a rear passenger in a vehicle parked in the vicinity of 27 East 98th Street in the County of Kings, State of New York.

17. Upon information and belief, on New Year's Day members of the Field Intelligence Unit within the 73rd Precinct in Brownsville, Brooklyn, got information from an informant that Derek Jackson had a firearm secreted in his fanny pack and that he would be a passenger in a car in the vicinity of 27 East 98th Street.

18. Upon information and belief, due to the change in the New York State discovery rules making disclosure of informants more transparent, rather than "burn" their informant defendant officers needed to create a pretextual reason to stop and search the vehicle that Plaintiff was in and subsequently find a reason to search Derek.

19. According to the sworn testimony of Defendant Officer Ryan Grandison, in a Mapp/Dunaway Hearing held on April 23, 2020, in the underlying criminal prosecution of Derek Jackson (*People of the State of New York vs Derek Jackson*, Kings County Indict No. 621/2020), Officer Grandison testified he was in a vehicle that was caravanning behind another police car in the confines of the 73rd Precinct allegedly trying to prevent and/or detect general crime conditions.

20. According to Defendant Officer Grandison's testimony [1] he was in a vehicle with field intelligence officers from the 73rd Precinct which included defendant Sergeant Arthur McCarthy and two other unnamed[2] NYPD officers. Officer Grandison's vehicle was behind another NYPD vehicle that contained other 73rd precinct officers which included defendant Police Officers Frank Hernandez, Sergeant Zul Chowdhury, Police Officer Lashonda Porterfield, and unnamed[3] Police Officer Jamal Moye.

21. On January 1, 2020, at approximately 4AM in the vicinity of 27 East 98th Street, according to Officer Hernandez's hearing minutes, Hernandez claimed that while he was caravanning with Officer Grandison's vehicle, at approximately 25 to 30 miles per hour, what made him and his

---

[1] For the remainder of the complaint any reference to hearing minutes or testimony is a reference to the testimony of either defendant Officer Frank Hernandez or Officer Ryan Grandison who both gave sworn testimony in a Mapp/Dunaway hearing held on April 23, 2020 in the underlying criminal prosecution of Derek Jackson (*People of the State of New York vs Derek Jackson*, Kings County Indict No. 621/2020).

[2] Unnamed= not charged in the instant complaint

[3] Id.

fellow officers stop Plaintiff's vehicle was that he noticed that Plaintiff's car was idling and blocking a fire hydrant (although later on cross examination Hernandez admitted that he had no reason to remember this block, the block was dimly lit and that the fire hydrant was shorter than the height of Plaintiff's vehicle).

22.     According to Officer Hernandez's testimony, he and Officer Grandison's vehicle boxed Plaintiff's car in so as not to allow Plaintiff's vehicle to leave. Officer Hernandez testified that he observed 5 passengers in Plaintiff's vehicle with Plaintiff seated in the backseat and that he observed certain members of Plaintiff's group drinking. Hernandez further testified that he and at least 7 other officers from both vehicles surrounded Plaintiff's car and after a brief conversation with the driver where he claimed to have smelled a strong order of marijuana (ultimately only 1 small ziplock of marijuana was recovered from the jeans of one of the vehicle's occupants) he and his team began to order everyone out of the vehicle to conduct a search of the car's occupants and the vehicle itself.

23.     According to both Officer Grandison and Hernandez' hearing minutes, when Plaintiff was ordered out of the vehicle they observed him holding a plastic bag of food and they also saw him holding a fanny pack around his shoulder. Both officers described Plaintiff as verbally combative in that Plaintiff was questioning why he as a rear passenger that wasn't drinking and/or smoking marijuana was being searched. [4]

24.     Officer Grandison testified that as Plaintiff got out of his vehicle he came out with a bag of food and the fanny pack and that Plaintiff was initially compliant in putting the food back in

---

[4] Since 2018, the NYPD has changed their policies with regards to the enforcement of marihuana, making the possession and burning of a small amount of marijuana a summonable offense. There was no probable cause to seize Derek Jackson for the alcohol and marijuana offenses they suspected as a rear seat passenger.

the car but when Officer Grandison asked Plaintiff to take off his fanny pack, Plaintiff paused and then began to flee with his fanny pack.

25. Officer Hernandez testified that as Plaintiff ran past him he was able to feel what he thought was a gun in Plaintiff's fanny pack and he yelled out to his fellow officers "hes got it" which was a universal police term meaning that Plaintiff had a gun. However, on cross examination, after being confronted with body camera footage of the incident, Officer Hernandez conceded that prior to Plaintiff fleeing and prior to Plaintiff brushing against Officer Hernandez, it was Officer Tantillo (field intelligence officer) that screamed "he got it, its in the bag" although Tantillo himself had no physical contact with the Plaintiff or his fanny pack.

26. A review of relevant body camera footage from the incident, and a review of IAB investigation reports of the aforesaid incident which included recordings of GO-15[5] transcripts that detail officers interactions with the defendant, it was revealed that Derek Jackson did not get that far when he attempted to flee. Derek was immediately confronted by a much larger and stronger Officer Grandison who was quickly able to pull off Plaintiff's fanny pack which contained a weapon and separate the pack from the Plaintiff. Plaintiff was then thrown to the ground by Grandison on the sidewalk only a few feet away from where his car was parked.

27. According to the aforesaid material, when Plaintiff was on the ground after being separated from the fanny pack, at least 6-7 officers became involved with trying to place cuffs on the Plaintiff. As can be seen on body worn camera of the incident, by the time that Plaintiff was thrown

---

[5] A GO-15 is an internal NYPD administrative hearing where officers are mandated to appear and testify to matters that the NYPD are investigating. Failure to appear and testify could result in the termination of the officer.

to the ground at least two other police cars arrived to the scene with anywhere between 4-6 additional officers on top of the initial 8 officers involved with the stop of Plaintiff's vehicle.

28. Officers claim that Plaintiff was resisting arrest which is belied by the body camera coverage of the incident. At least 5 officers, including defendants Officers Grandison, Hernandez, McCarthy, Chowdhury, and Porterfield all admitted to using physical force on Plaintiff while he was on the ground.

29. Specifically, according to NYPD Threat Resistant And Injury Reports ("TRI")[6] of the incident and GO-15 transcripts of the defendant officers, defendant officer Grandison admitted he initially forcibly took the defendant down which is what brought Plaintiff to the ground. Defendant Sgt. Zul Chowdhury admitted he was also involved in a forceable take down of Plaintiff and used hand strikes and a stun gun on the Plaintiff on the ground to restrain and/or apprehend him. Sgt. McCarthy admitted to using hand strikes and his stun gun 7 times while Plaintiff was on the ground to restrain and/or apprehend Plaintiff. PO Porterfield appeared to use a stun gun[7] against the Plaintiff and admitted to using hand strikes on Plaintiff to restrain and/or apprehend Plaintiff while he was on the ground.

30. Immediately after the Plaintiff's arrest PO Hernandez filled out a TRI report that just stated he used hand strikes to restrain and/or apprehend the defendant. However, when confronted with a civilian's independent video of the incident, which appeared to depict kicks to Plaintiff's head from PO Hernandez, Hernandez admitted he also used kick strikes to Plaintiff, which is against NYPD guidelines.

---

[6] If an NYPD officer uses force that results in the injury of an individual they must fill out a "TRI Report" to document the force they used and the justifications for that force.
[7] Porterfield's stun gun may not have been working.

7

31. As a result of Hernandez's omission of the kick strike from his initial TRI Report Hernandez was issued a command discipline. Interestingly enough, PO Hernandez testified that immediately after the incident along with his TRI report he filled out an 'out of line duty" injury report to request paid time off because he alleged he injured his right toe in the arrest of Plaintiff. The right foot was the same foot he would later admit in a suppression hearing that made contact with the Plaintiff. However, in Hernandez's injury report he claimed that the injury to his foot occurred when he stubbed his toe against the sidewalk, not when he was kicking Plaintiff. Hernandez's story was erroneously corroborated by his partner, unnamed Police Officer Moye.

32. Upon information and belief, while Plaintiff was on the ground, Officers Grandison, Hernandez, McCarthy, Chowdhury, and Porterfield collectively used greater than necessary force to restrain Plaintiff, particularly given the large numbers of officers on scene, when attempts should have been made to try to deescalate the situation.

33. As Plaintiff was on the ground being kicked, tased, punched and sat on by numerous officers he believed he was going to die. At one point while Plaintiff was on the ground he screamed "I have a daughter" to which Plaintiff claims Hernandez stated to him "he should have thought about that before."

34. Prior to being taken to Brookdale Hospital by NYPD officers, annexed to this complaint as **Exhibit A** are photos that document the brutality that was inflicted upon Plaintiff post-arrest. As can be seen on Exhibit A, there are visible injuries to Plaintiff's head, face, and body---including numerous burns from the stun guns used on him.

35. According to records from Brookdale Hospital plaintiff suffered a large depressed blowout fracture of medial wall left orbit of his eye. Mr. Jackson was instructed to see specialists for injuries to his back, shoulder and legs.

36. According to orthopedic specialist Dr. Raz Winiarsky, who Plaintiff went to see several months after his injury, Plaintiff presented to him with right knee and right shoulder pain. Dr. Winiarsky took X-rays, MRI and conducted other testing and determined that surgeries were needed to correct injuries on Plaintiff's knee and shoulder. Dr. Winarsky concluded that these injuries were casually related to the January 1, 2020 arrest.

37. Dr. Winiarsky performed the following surgeries on Plaintiff.

    a. On February 18, 2021, Plaintiff underwent a right knee anterior cruciate ligament reconstruction using an allograft, two compartment synovectomy, patellofemoral compartment and lateral compartment and a partial lateral meniscectomy.

    b. On August 5, 2021, Plaintiff underwent a right shoulder arthroscopy with repair of a massive labral tear, synovectomy and bursectomy.

38. Despite the aforesaid surgeries Plaintiff still walks with a cane and still has knee and shoulder problems.

39. Dr. Winiarksy has stated that within a reasonable degree of medical certainty, Plaintiff has sustained permanent, partial, and significant loss of use of function of the right knee, and right shoulder. Dr. Winiarsky also opines that he will need long term care to treat these injuries and Plaintiff's pain.

40. In addition to the aforementioned issues Plaintiff suffers post-traumatic stress, mental anguish and recurring, back and vision issues that have not been fully evaluated. Upon information and belief the field intelligence officers accompanying Officer Grandison had information that Plaintiff had a weapon.

41.     Upon information and belief the Defendant officers created a pre-textual reason to stop Plaintiff's car although its clear that the defendant officers were caravanning and going towards a specific person and place and that there was no way they could have seen that Plaintiff's car was parked in front of a fire hydrant.  Upon information and belief, given that the officers knew that they were trying to recover a gun, the defendant officers were pumped up with adrenaline and overreacted in dealing with Plaintiff when he was on the ground.

42.     Upon information and belief, when Plaintiff was on the ground he was no longer a threat to the five to seven officers that were surrounding and on top of him.

43.     As a result of Derek's January 1st arrest he will suffer permanent physical and mental disabilities.

### **FIRST  CLAIM  FOR RELIEF: EXCESSIVE FORCE**
42 U.S.C. § 1983 and Fourth Amendment
Against All Individual Officer Defendants

44.     Plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

45.     The Individual Officer Defendants intentionally touched and/or assaulted Plaintiff.

46.     The Individual Officer Defendants' touching of Plaintiff involved the use of excessive force and caused and/or exacerbated serious injuries to Plaintiff as described above.

47.     Plaintiff did not consent to the excessive physical contact by any of the Individual Officer Defendants, and they lacked any legal justification, excuse, or privilege for their conduct.

48.     By virtue of the foregoing, the Individual Officer Defendants each deprived Plaintiff of his Fourth Amendment right under the United States Constitution to be free of the excessive use of force.

**WHEREFORE**, Plaintiff demands judgment against the defendants individually and jointly and prays for relief as follows:

   a. For compensatory damages of not less than $5 million dollars;

   b. For punitive damages against the individual Defendants;

   c. For reasonable attorneys' fees, together with costs and disbursements, pursuant to 42 U.S.C. §1988 and to the inherent powers of this Court;

   d. Award costs of suit pursuant to 42 U.S.C. §§ 1920 and 1988

   e. For pre-judgment interest as allowed by law; and

   f. For such other and further relief as this Court may deem just and proper.

Dated: January 29, 2022  　　　　**THE LAW OFFICES OF ABE GEORGE, P.C.**
　　　　New York, New York

　　　　　　　　　　　　　　　　By:　　　/s/
　　　　　　　　　　　　　　　　　　　Abe George, Esq.
　　　　　　　　　　　　　　　　　　　99 Wall Street, Suite 3404
　　　　　　　　　　　　　　　　　　　New York, NY 10005
　　　　　　　　　　　　　　　　　　　(P) 212-498-9803
　　　　　　　　　　　　　　　　　　　(F) 646-558-7503
　　　　　　　　　　　　　　　　　　　e-mail: abe@abegeorge.lawyer